IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| CAPITAL CONCEPTS, INC. ) <br> d/b/a bCreative, Inc. ) <br>   ) <br> Plaintiff, ) <br>   ) <br> v. ) <br>   ) <br> THE MOUNTAIN CORPORATION ) <br> and ) <br> MOUNTAIN RETAIL, LLC, ) <br>   ) <br> Defendants ) <br>   ) | CIVIL ACTION NO. 3:11-cv-00036-NKM |

**Defendants The Mountain Corporation and Mountain Retail, LLC's Memorandum of Law in Support of Defendants' Motion for Summary Judgment or in the Alternative Motion to Dismiss, Plaintiff's Count I**

**Preliminary Statement**

This memorandum is submitted in support of Defendants The Mountain Corporation ("Mountain") and Mountain Retail, LLC's ("Retail") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, or in the alternative, motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), with respect to plaintiff Capital Concepts, Inc. d/b/a bCreative, Inc.'s ("bCreative") claim for copyright infringement (Count I). In Count I, bCreative alleges that defendants have infringed upon its copyrights with respect to nineteen different designs (purportedly completed in 2007) for which it recently (in May 2011) submitted copyright applications to the United States Copyright Office. However, the undisputed facts in this matter demonstrate that bCreative is not, in fact, the author of these designs since its alleged authorship is based solely upon an invalid and unenforceable work-for-hire agreement with George Robert McAbee ("McAbee"). As described below, unless the works were indeed works

made for hire (which they were not), such an agreement simply is meaningless – and there is no assignment of McAbee's copyright rights under the work-for-hire agreement or any other agreement for that matter since there is no such other agreement. Consequently, to the extent there is any copyright right to the designs authored by McAbee (which, if it exists at all, is extremely narrow) such rights belong to McAbee, and each of the nineteen registrations forming the basis of bCreative's copyright infringement claim is invalid. Without a valid copyright, this Court is without subject matter jurisdiction over this claim, and defendants are entitled to judgment as a matter of law, or, in the alternative, dismissal of the claim for failure to state a cause of action.

## Factual Background

In the fall of 2006, Mountain entered into a business relationship with Looking Good Licensing of Vermont to provide assistance to Mountain in developing some designs for a new t-shirt line, combining outdoor sports images, catchy phrases, and other artistic elements, on individual t-shirts which would be sold individually but which would be collectively called "Mountain Life." See Complaint at ¶28-29; see also Deposition of Scott Gardiner ("Gardiner Dep") (excerpts attached as Exhibit 4 to the Affidavit of Lisa Roy ("Roy Aff.")) at 21-22. Looking Good Licensing in turn suggested that bCreative (through its President Scott Gardiner) would be a good resource to prepare these designs. Deposition of Michael Gallen ("Gallen Dep.") at 57 (excerpts attached as Exhibit 7 to the Roy Aff.). Mountain was seeking this assistance because its art department, although capable, was overworked and would not have been able to complete the designs in a timely basis. Id. at 57-58.

This "look" or "style" of the Mountain Life line was to be achieved by taking an existing photograph (that was to be licensed for use through a third party licensing agency) and combined

with a tag line. Id. at 58-60 (describing the Mountain Life "look"). The photo was to be manipulated to be made to look like silhouetted monochromatic images. Id. at 59. By October 2006, bCreative began sending "comps" or samples of images for Mountain's review and approval. Gardiner Dep. at 21-22.; see also Roy Aff. at Exs. 5, 6. Ultimately, Mountain approved the nineteen designs at issue in Count I,[1] and the designs were put into production in 2007.[2]

However, bCreative itself did not create the various designs it sent to Mountain. See Gardiner Dep. at 27-28. Rather, the artistic elements and endeavor associated with each of the designs sent or made available to the Mountain– and the only aspects of the designs provided by bCreative to The Mountain that are even arguably copyrightable[3] - were done by an independent contractor hired by bCreative named George McAbee. Id. at 162; see also Deposition of George McAbee ("McAbee Dep.") (attached as Exhibit 1 to the Roy Aff.) at 19 (stating that he worked as an independent contractor); id. at 31-32 (Scott Gardiner "needed me to create the look, the creative aspect of what that property was, how it would go to retail, how it would be presented to

---

[1] While bCreative has asserted claims with respect to other shirts, only nineteen have been registered and are the subject of Count I. The copyright applications for these nineteen images are attached as Exhibit 3 to the Roy Aff.

[2] Mountain licensed the designs at issue through a licensing agreement with Looking Good Licensing, LLC, as described in plaintiff's complaint (and attached as Exhibit 3 to the Complaint), which was permitted by agreement with bCreative to license the designs to third parties. However, the terms of Mountain's agreement with Looking Good Licensing, LLC are not relevant for purposes of this motion, which addresses the validity of plaintiff's copyright registrations.

[3] As described in more detail below, the only potentially copyrightable elements of the designs provided by bCreative to Mountain consist of the changes McAbee made to the stock photographs and tag lines, as it is well established that these types of stock photos (licensed from another source) and short tag lines, standing alone, are not copyrightable. See Bouchat v. Baltimore Ravens, 241 F.3d 350, 356 (4th Cir. 2001).

3

the client and then eventually into the retail market."); id. at 36-50 (discussing the artistic decisions made and implemented by McAbee). [4]

The artistic design elements implemented by McAbee include creating a border for each of the images and deciding how to place the image within that border – including how much negative space there should be and the contrast applied to elements of the image. See, e.g., id. at 37; 39; 48-49; 75. McAbee was also responsible for the placement of the text on the image, the font and coloring of the text, the decision of whether there should be "shadowing," "distressing," "outer glow" or other "masks" added to the image. See, e.g., id. at 39; 57; 60. McAbee also added elements to some images, including the addition of a compass in one particular image, and similarly, drew in elements where necessary to make the image work for purposes of reproduction on a t-shirt, such as drawing in a fishing line in several of the images. Id. at 50; 69. McAbee was also responsible for making the image a tri-tone image, that is, taking the full-color photographs and breaking that down to a four color process that could be used in the re-production of the design on a t-shirt. Id. at 36-37; 49.

For example, in the design entitled "The Best Fights Don't Happen at Hockey Games," contained in Roy Aff. Exhibit 3 as McAbee Exhibit 6, McAbee indicated that his decisions included creation of the border, placement of the text and font selection, and that he also drew in the fishing line. McAbee Dep. at 51-52. As another example, in "Carve Diem," McAbee Exihibit 8 (contained in Roy Aff. Exhibit 3), McAbee implemented all of the design decisions described above, and, in this particular case, also decided to apply an "outer glow" on the text. McAbee Dep. at 57. In other words, each and every element of the design provided by bCreative to Mountain, from the placement of the text and the picture, to the font and the coloring, was

---

[4] Plaintiff did not identify McAbee in its initial disclosures and did not identify him initially in its responses to interrogatories seeking the identity of witnesses with pertinent knowledge.

decided and undertaken by McAbee and not bCreative. McAbee created these without a sample or guideline from bCreative with respect to what direction to go in; the designs were completely at his discretion. Id. at 34; see also Roy Aff. at Ex. 5 (September 13, 2006 email from Scott Gardiner to McAbee requesting that he come up with something "unique"). Thus, to the extent that the nineteen designs at issue are entitled to copyright protection (which Mountain does not concede), the right would apply to the artwork authored solely by McAbee. McAbee Dep. at 36-50 (discussing his creative decisions); 43 (did not work with Mountain or LGL).

Upon completing the designs, McAbee uploaded the designs onto bCreative's FTP server. McAbee Dep. at 86 (stating that he would have uploaded the files to bCreative's FTP server); 115-16 (same). Once uploaded, bCreative would "either allow the client to access the server, access the files themselves, or . . . they could provide it on a disc drive or a CD. . . ." Id. at 86-87. In other words, bCreative did not modify the file after McAbee completed the design and uploaded the file before sending it to the client (Mountain). Id. at 87 ("Q: Based on your dealings with Scott Gardiner and the folks at bCreative, is it likely that they would have modified the file before either providing it to the client or allowing the client access to the file? A: No.").

On August 24, 2007, almost a year after he first created the designs and seven years after he began working as an independent contractor with bCreative, McAbee signed an agreement titled "Work for hire" ("the Agreement"), which is attached as Exhibit 2 to the Roy Aff. The Agreement states, in pertinent part:

> I, George Robert McAbee of Nomad Design Company, agree that any and all drawings, illustrations, characters, text, layouts, designs, ideas, digital files, or any other work (collectively the "Creative Works") that I have created or worked on for either Capital Concepts, Inc., bCreative, Inc., or Offside, LLC . . . in the past, or, unless mutually agreed to in writing by me and the appropriate Hiring Party, will create or work on in the future, are "Works Made For Hire" within the meaning of the United States Copyright Act.

The Agreement is not signed by Capital Concepts, bCreative or Offside, LLC and does not refer expressly and specifically to the nineteen designs at issue in this case.

On May 3, 2011, only seven days before filing this lawsuit (but more than two years after the termination of the agreement with Mountain and some four plus years after the creation of the designs by McAbee), bCreative filed copyright applications for each of the nineteen images. See Roy. Aff. at Ex. 3. On each application, bCreative listed itself as the author and noted that the design for which copyright registration was sought was a "work made for hire". Id. bCreative subsequently filed the instant action claiming copyright infringement of the nineteen images, among other claims.

## **Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and any admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Brown v. Flowers, 196 Fed.Appx. 178, 180-181 (4th Cir. 2006); U-Haul International, Inc. v. WhenU.Com, Inc., 279 F. Supp. 2d 723, 726-27 (E.D.Va 2003). While the Court must construe the facts in the light most favorable to the non-moving party, that party "may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Silver Ring Splint Co. v. Digisplint, Inc., 543 F. Supp. 2d 509, 512(W.D. Va 2008) (quotations omitted).

**Argument**

It is well established that in order to prove a claim for copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." O'Well Novelty Co., Ltd. V. Offenbacher, Inc., 2000 U.S. App. LEXIS 18526, *9 (4th Cir. 2000).  While a certificate of copyright registration creates a presumption of validity, a defendant may rebut the presumption "by showing that the work was not original or that the copyright registration was invalid." Id. at 9-10.  In this case, plaintiff has not and cannot, as a matter of law, demonstrate ownership of a valid copyright since the Agreement is invalid and does not transfer any rights of authorship held by McAbee to bCreative.  Therefore, authorship of the nineteen designs remains with McAbee as compared to bCreative.

The Copyright Act provides that copyright ownership vests in the author of the work.  17 U.S.C. §201.  As a general rule, the author of a work is the party who actually creates it, in other words, the person who transforms an idea into a fixed, tangible expression that is entitled to copyright protection.  Id.; see also Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989).  However, an exception to the general authorship rule is made when the work is "made for hire." See id.

Section 101 of the Copyright Act defines a work made for hire, in pertinent part, as

> (1) a work prepared by an employee within the scope of his or her employment; or
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

In this case, bCreative has taken the position that it is in fact the author of the works and that its consequent right to claim a copyright is grounded in the work-for-hire Agreement with McAbee.[5] This position is demonstrated by the fact that it listed on each of the nineteen applications that the work was in fact a "work made for hire" – and that bCreative did not otherwise list McAbee (or anyone else for that matter) as a co-author.

There is no dispute that McAbee was not an employee of bCreative working within the scope of his employment at the time he created these designs, but was instead an independent contractor.  See McAbee Dep. at 19; Gardiner Dep. at 162.  Thus, in order to have obtained any rights with respect to McAbee's work under the theory of work-for-hire, bCreative must have satisfied the requirements of §101 "work made for hire" definition at paragraph (2) which reads: (1) that the work was "was specially ordered or commissioned" as part of one of the nine statutorily articulated categories; and (2) "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  The Agreement relied upon by bCreative in this case fails to satisfy any of these criteria much less all of them.

I. The Agreement is Defective on its Face Based Upon the Plain Language of the Statute

The plain language of 17 U.S.C. §101 "work made for hire" definition at paragraph (2) requires that a work-for-hire agreement be "signed by them" thereby requiring both parties to the contract to sign for it to be effective.  "The statutory language is 'signed by them,' that is, both parties, and it means what it says."  Manning v. Bd. Of Trustees of Cmty. Coll. Dist. No. 505, 109 F. Supp. 2d 976, 980 (C.D. Ill. 2000) (emphasis added); see also Schiller & Schmidt v. Nordisco, 969 F.2d 410, 412 (7th Cir. 1992) (same).  The Manning case involved the validity of a work made for hire agreement between and employee and employer whereby the employee

---

[5] Mountain assumes, solely for the purpose of this motion, that its involvement in the design process did not make Mountain a co-author.

8

purportedly retained his rights to his work under 17 U.S.C. §201(b). Id. 17 U.S.C. §201(b) provides:

> WORKS MADE FOR HIRE. — In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

Like 17 U.S.C. §101"work made for hire" definition at paragraph (2), §201(b) provides for an agreement "signed by them" in the context of a work made for hire arrangement, and the Manning Court's analysis is particularly pertinent to the interpretation required in this case. As noted by the Manning Court, "one reason a signed statement is required is to make the ownership of the property rights in intellectual property clear and definite, so that such property will be readily marketable. This is consistent with Congress' goal in revising the 1976 Act of enhancing predictability and certainty of copyright ownership" in a work made for hire. Manning, 109 F. Supp. 2d at 980 (quotations and citations omitted). Indeed, "[u]nwritten understandings or writings not containing the signatures of both parties are insufficient to rebut the presumption" of authorship. Id. (Emphasis added).

Although this issue has not been directly addressed by this Court or the United States Court of Appeals for the Fourth Circuit, the Fourth Circuit has suggested that signatures by both parties is required for a valid work-for-hire agreement. See The Brunswick Beacon v. Schock-Hopchas Publishing Co., 810 F.2d 410, 413 (1987) rev'd on other grounds, Reid, 490 U.S. at 736. In that case, the Court denied application for the work-for-hire doctrine under 17 U.S.C. §101"work made for hire" definition at paragraph (2), stating:

> [e]ven if the newspaper is a collective work or a compilation, there was no agreement signed by the newspaper and the advertiser designating these advertisements as works for hire. This part of the definition is permissive

> only and is effective only if both parties execute a written agreement that the work is for hire.

Id. (emphasis added). Because the signatures of both parties are not present, the Agreement is defective and invalid.

Even if this Court was to decide that bCreative's signature is not required, the Agreement would still be defective on its face and invalid because it was not executed prior to the time McAbee began (and in many cases completed) the designs. While there is some dispute among the Circuits over whether a work-for-hire agreement may be retroactively applied, two Circuit Courts have concluded that a work-for-hire agreement must precede the creation of the work in order to fulfill its purposes under the statute. See Schiller, 969 F.2d at 412 (7th Cir. 1992); Gladwell Govt. Services Inc. v. County of Marin, 265 Fed. Appx. 624, 626 (9th Cir. 2008). In Schiller, the United States Court of Appeals for the Seventh Circuit denied a claim of ownership on the basis of a work-for-hire agreement, where the agreement was signed after the work, photographs in that case, were taken. Schiller, 969 F.2d at 412. The Court reasoned that "[t]he requirement for a written statement regarding the copyright on a specially commissioned work is not merely a statute of frauds . . . the signed statement requirement in section 101 (2) has a second purpose—to make the ownership of property rights in intellectual property clear and definite, so that such property will be readily marketable." Id. The Schiller Court concluded that, "[t]he writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally." Id. Similarly, the Federal Court of Appeals for the Ninth Circuit has denied a claim of ownership through a work-for-hire agreement where it did not exist prior to the creation of the work. Gladwell Gov't Serv., Inc., 265 Fed. Appx. at 626 (9th Cir. 2008).

In this case, the work-for-hire agreement was made nearly one year after McAbee created many of the designs. See Ex. 5 to Roy Aff. (September 13, 2006 email from Gardiner to McAbee requesting that McAbee "come up with an interesting layout that is your unique idea, not just doing what we suggest."); id. at Ex. 6 (October 27, 2006 email from Gardiner to McAbee indicated that three of his designs had been approved). There can be no dispute that significant work had occurred, and designs completed, months before the work-for-hire agreement was executed on August 24, 2007. Consistent with the analysis of the Seventh and Ninth Circuit Courts, this Court should find that such an agreement, executed so long after the work in this case and without the signatures of both parties, thwarts the very purposes of the statute and leads to the type of confusion now at issue over the ownership of these designs, and should not be enforceable even if all other conditions precedent were met.

Given the plain language of the statute, bCreative's failure to sign the Agreement is fatal, and, therefore, there is no valid work-for-hire agreement transferring ownership rights in the works from McAbee to bCreative. Likewise, bCreative's execution of the Agreement long after the works were completed, or at the very least, commissioned, invalidates the Agreement. Since bCreative's only asserted claim to authorship is by virtue of this invalid and unenforceable Agreement, it therefore has no vested right in copyright ownership, and Count I cannot survive. See 17 U.S.C. §201; Bean v. McDougal Littell, 669 F.Supp.2d 1031, 1033 (D. Ar. 2008) (noting "a federal court must dismiss a copyright infringement claim for lack of subject matter jurisdiction when the copyright at issue is not validly registered" and further that valid registration requires that the copyright claimant be the author of the work or the person that has obtained ownership of all of the rights under the copyright initially belonging to the author). Indeed, these deficiencies are not mere technicalities, easily corrected with the Copyright Office.

Rather, these issues go to the core of who owns the copyright rights, and consequently, bCreative's standing to seek protection for the rights at all.

Additionally, the plain language of the statute states that any work at issue will only be considered a work made for hire "if the parties expressly agree in a written instrument signed by them that <u>the work</u> shall be considered a work made for hire".  17 U.S.C. §101"work made for hire" definition at paragraph (2). (Emphasis added.)  In the present case, the Agreement signed by McAbee is generic in that it does not expressly mention the nineteen designs at issue as required by the statutory requirements of the "work made for hire" provisions of the statute. Accordingly, since the Agreement does not mention <u>the works</u> expressly, but rather generically states that it purports to cover:

> "any and all drawings, illustrations, characters, text, layouts, designs, ideas, digital files, or any other work (collectively the "Creative Works") that I have created or worked on for either Capital Concepts, Inc., bCreative, Inc., or Offside, LLC . . . in the past, or, unless mutually agreed to in writing by me and the appropriate Hiring Party, will create or work on in the future".

Thus the Agreement sign by McAbee and relied on by the Plaintiff to transfer ownership of the nineteen designs at issue fails for yet another reason in that the Agreement does not "expressly" refer to "the work" as required by the work made for hire statute.

II. <u>The Designs at Issue Cannot be the Subject of a Work Made For Hire Agreement Under 17 U.S.C. 101</u> "work made for hire" definition at paragraph <u>(2) and the Agreement is therefore Invalid.</u>

Even assuming the Agreement in this matter is not defective based upon the timing or the failure of both parties to sign the Agreement as discussed below, bCreative's reliance upon the Agreement as the basis of its copyright claim is still improper because the designs at issue cannot be the subject of a work made for hire agreement.  As noted above, Section 101 "work made for hire" definition at paragraph (2) of the Copyright Act sets forth nine limited categories of works

that may be properly designated as "works made for hire."  This exhaustive list is "a work specially ordered or commissioned for use as:  (1) a contribution to a collective work; (2) a part of a motion picture or other audiovisual work; (3) a translation; (4) a supplementary work; (5) a compilation; (6) an instructional text; (7) a test; (8) an answer material for a test; or (9) an atlas.

     It is immediately apparent that the claimed designs cannot be considered a work specially ordered or commissioned for use as part of a motion picture or audiovisual work, a translation, an instructional text, a test, answer material for a test, or an atlas.  Similarly, the designs cannot be considered a supplemental work, which is defined in the statute as "a work prepared for publication as a secondary adjunct to a work by another author for purposes of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes," 17 U.S.C. §101 "work made for hire" definition at paragraph (2).  The designs likewise do not fit within the ambit of the remaining two categories – contribution to a collective work or a compilation.

     A "collective work" is defined by the statute as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions consisting of separate and independent works in themselves, are assembled into a collective whole." <u>Id</u>.  A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." <u>Id</u>.  Pursuant to the statute, the term "compilation" includes "collective works." <u>Id</u>.  Thus, by its plain language, these categories require some grouping or other formation that, based upon that grouping, makes it unique.  In this case,

plaintiff has separately identified nineteen independent designs and sought copyright protection for these independent designs by filing nineteen separate applications with the United States Copyright Office. See Roy Aff. at Ex. 3. Plaintiff has not treated these designs as a collective work nor a compilation such that the grouping, in and of themselves, is unique. Rather, it has taken the position that each of the designs in an individual unique work worthy of copyright protection. Therefore, plaintiff's actions preclude it from arguing that the designs somehow constitute a collective work or compilation.

Further, while there is no dispute that these nineteen images were considered a new line of apparel for Mountain and Retail, each of the designs was independently available for sale. See Roy Aff. at Exh. 9, 10 (Mountain catalogue and website demonstrating availability of individual single shirt sales). Unlike the case with a periodical or anthology, a consumer is not required to buy the entire "Mountain Life" line, or even a portion thereof in a single purchase, but can purchase a single t-shirt displaying a single design.

Likewise, plaintiff cannot argue that each design in and of itself is a collective work or compilation. As noted above, pursuant to the statutory definition, a collective work requires that each of the elements constitute "separate and independent works in themselves." 17 U.S.C. §101. It is well established that the mere use of a tag line alone cannot be considered a "work" for purposes of copyright protection. See 37 CFR 202.1 (noting that "words and short phrases such as names, titles and slogans; familiar symbols or designs" are not subject to copyright); Takeall v. PepsiCo., Inc.,1993 U.S. App. LEXIS 31911, *21-22 (4th Cir. 1993) (refusing to extend copyright protection to commercial short phrase); Johnson v. Automotive Ventures, Inc., 890 F. Supp. 507, 511 (W.D. Va. 1995) ("In the spirit of protecting expression without stifling ideas, courts have refused to extend protection to short phrases."). Similarly, bCreative cannot

claim that use of the stock photo chosen for each of the designs is copyrightable by bCreative, since that image or photo has been licensed from a third party entity and its use is widely available to anyone willing to pay the license associated with such use.  See McAbee Dep. at 35; 115.

Further, bCreative cannot argue that each design is the "assembly of preexisting materials" necessary for a compilation.  Although defendant does not concede that the work performed by McAbee amounts to the level of enough authorship to give rise to copyrightability, the uniqueness of the design is, at best, not in the simple photo or text – the preexisting elements of each design.  Rather, it is the combination of those two things, the placement of the text, the font selection, the coloring, and any other creative elements that were implemented by McAbee.  See Bouchat v. Baltimore Ravens, 241 F.3d 350, 356 (4th Cir. 2001) (noting that combinations of items not copyrightable may, as a whole, be sufficiently creative to warrant such protection, even if elements of it exist in the public domain); X-IT Prods., LLC v. Walter Kidde Portable Equip, Inc., 155 F. Supp 2d 577, 610 (E.D. Va. 2001) (same).

Under the plain language of the statute, the nineteen designs claimed by bCreative and relied upon as the basis for its copyright infringement claim do not and cannot meet the requirements necessary to be designated a work made for hire.  Because the designs cannot properly be the subject of a work made for hire agreement, the Agreement here is null, void and ineffective, and thus, the applications and resulting registrations are also null, void and invalid.  Since bCreative's only asserted claim to authorship is by virtue of this invalid and unenforceable Agreement, it therefore has no copyright ownership, and consequently, the copyright registrations are invalid and Count I cannot survive.  See 17 U.S.C. §201; Bean, 669 F.Supp.2d at 1033 (D. Ar. 2008) (noting "a federal court must dismiss a copyright infringement claim for

lack of subject matter jurisdiction when the copyright at issue is not validly registered" and further that valid registration requires that the copyright claimant be the author of the work or the person that has obtained ownership of all of the rights under the copyright initially belonging to the author.

## Conclusion

For the reasons discussed more fully above, defendants are entitled to judgment as a matter of law, and summary judgment should be granted to defendants as to plaintiff's Count I. In the alternative, bCreative's Count I should be dismissed.

                                Respectfully submitted,

                                THE MOUNTAIN CORPORATION and
                                MOUNTAIN RETAIL, LLC

                                By their attorneys,
                                WILLIAMS MULLEN, PC

Date:  June 1, 2012             By: /s/ Bryan D. Wright
                                                      Bryan D. Wright, Esq. (VSB # 43773)
                                                      321 E. Main St., Suite 400
                                                      Charlottesville, VA  22902
                                                      434-951-5718
                                                      bwright@williamsmullen.com

                                OF COUNSEL:

                                COOK, LITTLE, ROSENBLATT & MANSON, p.l.l.c.

Arnold Rosenblatt (*pro hac vice*)
1000 Elm Street
Manchester, NH 03101
(603) 621-7100
a.rosenblatt@clrm.com


BOURQUE & ASSOCIATES, INC.


Daniel J. Bourque (*pro hac vice*)
835 Hanover Street, Suite 301
Manchester, NH  03104
(603) 623-5111
dbourque@nhpatlaw.com


## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing was served on Patrick C. Asplin, Esq. and Richard Armstrong, Esq. on this date via the Court's ECF system.

                          /s/ Bryan D. Wright_____